IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

INNOVATION VENTURES, LLC
d/b/a LIVING ESSENTIALS.,
a Michigan corporation,

         Plaintiff,

v.

NATURES ONLY, INC.
a California corporation,
CPB INTERNATIONAL, INC.
a Pennsylvania corporation
PHARMED MEDICARE,
a New York corporation,

         Defendants.

_____/

BUTZEL LONG
By:  J. Michael Huget (P39150)✓
      Laurie J. Michelson (P47214)✓
      Michael Turco (P48705) ✓
150 W. Jefferson, Suite 900
Detroit, MI 48226
(313) 225-7000
Attorneys for Plaintiff

_____/

Case No. 03-71666
Hon.
JURY TRIAL DEMANDED

JOHN CORBETT O'MEARA

MAGISTRATE JUDGE SCHEER

FILED
APR 29 2003
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

**VERIFIED COMPLAINT FOR PRELIMINARY INJUNCTION,
<u>PERMANENT INJUNCTION AND DAMAGES</u>**

Plaintiff INNOVATION VENTURES, LLC d/b/a LIVING ESSENTIALS ("Living Essentials") for its Complaint against Defendants, NATURES ONLY, INC. ("Natures Only"), CPB INTERNATIONAL, INC. ("CPB") and PHARMED MEDICARE ("Pharmed") [collectively, the "Defendants"], states as follows:

- 1 -

### Nature of the Action

1. In calendar year 2001, after fifteen years of extensive research and development work and expenditures, Living Essentials began manufacturing and distributing a dietary-supplement product that helps prevent head-aches, nausea and other discomforts caused by consuming alcoholic beverages – *i.e.*, caplets that help prevent the general malaise associated with hangovers. This action arises out of the Defendants' wrongful and blatant copying of Living Essentials' distinctive trade dress for use on the packages of its competing hangover-prevention product. (Copies of Living Essentials' trade dress and Defendants' infringing packaging are attached as Exhibit A, Tabs 1 and 2). The Defendants' willful infringement of Living Essentials' product trade dress by using confusingly similar packaging violates the Lanham Act, the common law, and Michigan Consumer protection laws.

### The Parties, Jurisdiction and Venue

2. Innovation Ventures LLC, d/b/a Living Essentials, is a Limited Liability Corporation incorporated under the laws of the State of Michigan, having its principal place of business at 3141 Old Farm Lane, Walled Lake, Michigan 48390. Since April 2001, Living Essentials has manufactured, marketed and sold a dietary supplement caplet for the prevention of hangovers under the CHASER™ trademark.

3. On information and belief, Natures Only is a California corporation with a principal place of business at 565 W. End Ave., New York, N.Y. 10024. Natures Only is the manufacturer, marketer and distributor of a product that it claims prevents hangovers under the trademark CHEERS. On information and belief, Natures Only promotes and seeks distributors for this product in Michigan through its website, www.2cheers.com, and promotes directly to Michigan consumers through its maintenance of a booth at major trade shows for products of natural origin.

4. On information and belief, Pharmed Medicare is an Indian company with its Unites States headquarters at the same location as Natures Only, 565 W. End Ave., New York, N.Y. 10024. This address is also, on information and belief, the residence of Pharmed's principal, Sundeep Aurora. Like Nature's Only, Pharmed Medicare is a manufacturer of the CHEERS product.

5. On information and belief, CPB International, Inc. ("CPB") has a principal place of business at 3 Golden Slipper Road, Bartronsville, PA 18321. CPB is a supplier of bulk nutritional products, including the CHEERS product. CPB has distributed samples of the CHEERS product in Michigan, and, on information and belief, has actively solicited sales in Michigan, and operates a web site, www.cpbweb.com, that provides product information in Michigan.

6. This Court has original jurisdiction of the trade dress infringement claims pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331, 1338 as well as supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

**General Allegations**

8. Since April 2001, Living Essentials has manufactured, marketed and sold a dietary supplement that helps to prevent head aches, nausea and other discomforts caused by consuming alcoholic beverages under the trademark CHASER. The CHASER caplets contain activated calcium carbonate and vegetable carbon that absorb the toxins in alcoholic beverages that cause hangovers. The CHASER caplets have become one of the best-selling hangover preventative products in the country.

9. Since April 2001, Living Essentials has built a nationwide distribution network

for CHASER by selling to drug, grocery, health food/vitamin, liquor, convenience and mass merchandisers' stores – such as GNC, Kroger, Rite Aid, 7-Eleven and Kmart. Today the CHASER caplets are sold in every state in the country as well as in several foreign countries.

10. The immediate popularity and success of the CHASER caplets has not gone unnoticed. Several national and local publications, including Let's Live Magazine, AFD Food and Beverage Report, Boulder Daily Camera, Philadelphia Enquirer, Hartford Courant, Macomb Daily, Crain's Detroit Business and the Detroit Free Press, have featured stories about the CHASER product.

11. Living Essentials has also received numerous communications from grateful consumers of the CHASER caplets reflecting the enormous goodwill Living Essential has created for its product among the public. (See representative testimonials on the www.doublechaser.com website).

12. To create, build on and maintain the public's awareness and goodwill, Living Essentials has spent significant amounts on advertising and promotion. From 2001 to 2003 year to date, it spent over $750,000 on radio, television, billboard and print advertising. (*See* examples of advertising in Chaser Brochure at Exhibit B). The CHASER product is also promoted at the major health-product Trade Shows, such as the Natural Products Expo East and West as well as several large international shows in Europe and Asia. Additionally, Living Essentials promotes and sells the CHASER product through the web site www.doublechaser.com.

13. Virtually every phase of the marketing, promotion and sale of the CHASER product involves its unique product trade dress. The product is sold primarily in 40-count bottles and 4-count traveler packs. This latter trade dress consists of a rounded, die-cut, fold-over card

with a manually inserted blister that contains and exposes the 4 caplets in see-through openings. The background color of the entire packaging is red with the CHASER trademark in yellow across the top. In the upper-left corner is a diagonal slant with a yellow background that contains the word "New" in red letters. This product trade dress also lists attributes of the caplets in white lettering, including "Freedom from Hangovers" and "helps prevent hangovers by absorbing elements in beer, wine and liquor that cause hangovers." Above the openings that expose the caplets is a yellow bar that runs across the length of the package with the explanation, in red letters, "Two capsules work for up to 6 drinks." On the back of the product package is a "hang tag" so that it can hang from a display in a store. (The CHASER product trade dress is attached at Exhibit A, Tab 1).

14. The combination of the above features gives the CHASER product a distinctive overall look and appearance.

15. At certain outlets, the CHASER 4-count packages are sold at the check-out counter. For these purposes, Living Essentials designed a display carton which, *inter alia*, consists of an open box with a header extending out of the back of the box and which can hold twelve of the 4-count packages. Living Essentials adopted the CHASER trade dress for the box: the background of the display carton (including the extension) is red with the trademark CHASER in yellow and additional product information in white and yellow lettering. (A photograph of the display carton is included in Exhibit B). In addition to the 4-count packages, this display carton also contains a 3 ½ x 4 ½ fold-out CHASER brochure. (Exhibit C).

16. Living Essentials' use for the CHASER product of a red, rounded-edge product card that folds over and contains a manually inserted 4-count blister for the caplets as well as a hang-tag, with the trademark CHASER in yellow toward the top, a diagonal slant in the upper-

left corner, a yellow bar across the middle and additional explanatory information in white, yellow and red letters is not functional, as competitors may use alternative designs and ornamental features to make other packaging.

17. Living Essentials' use for the CHASER product of a red, rounded-edge product card that folds over and contains a hang-tag and 4-count blister for the caplets, with the trademark CHASER in yellow toward the top, a diagonal slant in the upper-left corner, a yellow bar across the middle and additional explanatory information in white, yellow and red letters is inherently distinctive and/or has acquired distinctiveness through secondary meaning.

18. On information and belief, Natures Only manufactures and distributes products devoted to natural healthcare, with an apparent emphasis on products that help to relieve joint pain and increase bone strength. Natures Only (and Pharmed) also manufacturers a product under the tradename CHEERS that it claims can prevent hangovers and which it promotes as having the same ingredients as the CHASER product.

19. At a trade show in March 2003, Living Essentials discovered that Natures Only was promoting its competing CHEERS hang-over prevention product in a product trade dress that was modeled directly after the CHASER 4-count pack. Subsequently, Living Essentials also learned that CPB was distributing the CHEERS product in the same trade dress. The CHEERS packaging is the identical size, shape and color as the CHASER packaging and contains virtually the identical explanatory language.

20. More specifically, the CHEERS product trade dress consists of the same-size, die-cut fold-over card with a manually inserted blister that contains 4 caplets in see-through openings and a hang-tag on the back. The entire background is red and the CHEERS mark is in yellow toward the top of the package – in virtually the same color and location as the CHASER mark.

There is a diagonal slant in the upper left-hand corner that says "new." The package also states, in white lettering, that it "Helps avoid hangovers," "Helps avoid headaches and other discomforts by absorbing harmful elements in beer, wine and liquor," and has a yellow bar in the middle running across the package that says, in red lettering, "Two captabs work for up to 6 drinks." This is taken directly from the CHASER packaging. The only change made by Natures Only, which is ineffectual, is it uses the word "avoid" rather than "prevent" and "captabs" rather than "caplets." (*See* Exhibit A, Tab 2).

21. The red and yellow colors selected by Defendants for the color of the fold-over card container, the CHEERS mark and other explanatory language on the package, are virtually identical to the red and yellow colors used by Living Essentials for its CHASER product trade dress.

22. The location and orientation selected by Defendants for the CHEERS designation and other explanatory language is virtually identical to the location and orientation used by Living Essentials for the trademark CHASER and other explanatory language on the CHASER product trade dress. The type font and size selected by Defendants for the trademark and wording on the package is virtually identical to that used by Living Essentials for its CHASER product trade dress. The product information, warnings and directions on the CHEERS package are virtually identical to those contained on the CHASER package.

23. The overall impression of the CHEERS packaging is identical to that of the CHASER packaging.

24. The trade dress selected by Defendants for use with the CHEERS product is substantially identical to or substantially indistinguishable from, and is confusingly similar to Living Essentials' distinctive trade dress used with its CHASER product.

25.     To further cause consumer confusion, Natures Only has a display carton that holds 12 of the CHEERS 4-count packages which is the same design and colors as the CHASER display carton. Natures Only is also distributing a 3 ½ x 4 ½ fold-out brochure that is the same size, shape and colors as the CHASER product brochure. On information and belief, Natures Only has copied portions of the CHASER brochure and added the materials to its own brochure. (*See* Exhibit D). Additionally, Natures Only web site for the CHEERS product has the domain name www.2Cheers.com. On information and belief, the "2Cheers" is patterned after Living Essentials' "doublechaser." The manner of entry into the CHEERS web site is virtually identical to that of the CHASER web site and consists of the same red and yellow colors.

26.     On information and belief, Natures Only and the other Defendants' actions were undertaken deliberately and willfully with the specific intention of deceiving the trade and purchasing public into believing that its dietary supplement for the prevention of hangovers is Living Essentials' CHASER product or in some way connected with Living Essentials.

## COUNT I

### Violation of 15 U.S.C. §1125(a)

27.     Living Essentials restates and incorporates by reference the allegations of paragraphs 1 through 26.

28.     Despite Living Essentials common-law and statutory rights in its distinctive trade dress, Defendants began using Living Essentials' trade dress throughout the United States.

29.     The use of Living Essentials' trade dress for Defendants' product causes a likelihood of confusion, deception and mistake and constitutes a false designation of origin and description in direct violation of 15 U.S.C. §1125(a).

30.     Defendants' use of Living Essentials' CHASER trade dress was done with a

specific intention to confuse and deceive the public and to lead the public to erroneously conclude that Defendants' CHASER product is produced by, connected or associated with Living Essentials or that the product has been placed upon the market with Living Essentials' consent and authority. As a direct result of Defendants' intentional conduct, Living Essentials has suffered irreparable harm in the marketplace.

31. The continued and expanded use of the confusingly similar trade dress will continue to cause confusion and deception as to source and sponsorship in the marketplace, and will continue to cause serious and irreparable injury to Living Essentials.

32. On information and belief, Defendants' acts have been carried out in interstate commerce and have resulted in a loss of sales to Living Essentials.

33. Upon information and belief, Defendants' activities have caused and continue to cause considerable irreparable injury to Living Essentials' reputation and goodwill, and unless Defendants are preliminarily restrained, at first during the pendency of this action and thereafter perpetually, from continuing its wrongful activities, the irreparable injury to Living Essentials will increase.

34. Upon information and belief, Defendants' activities have caused and continue to cause harm to purchasing customers, and prospective purchasing customers, the consuming public and the general public, in amounts not presently known.

35. Upon information and belief, Defendants' activities have allowed them to make profits to which they are not entitled.

36. Living Essentials has expended substantial resources to date, and will continue to expend additional substantial resources in enforcing their rights with respect to Defendants' activities.

37. Living Essentials has no adequate remedy at law for Defendants' activities.

38. On information and belief, Defendants' acts were aimed at the willful misappropriation of Living Essentials' trade dress and the valuable goodwill of Living Essentials' business, thus unlawfully benefiting Defendants.

39. Upon information and belief, Defendants' activities constitute willful and intentional infringement of Living Essentials' trade dress in disregard of Living Essentials' proprietary rights, and were commenced and have continued in spite of Defendants' knowledge that such activities were and are in direct contravention of Living Essentials' rights, making this an exceptional case as to warrant an award of attorneys' fees under 15 U.S.C. § 1117.

WHEREFORE, Living Essentials requests that this Court grant the following relief:

(a) that this Court find that Living Essentials is the owner of the distinctive trade dress as outlined above and that Defendants have infringed this trade dress;

(b) that Defendants' employees, servants, agents, and all others acting in concert with them be enjoined, both preliminarily during the pendency of the litigation as well as permanently thereafter, from infringing Living Essentials' trade dress and/or using any other trade dress which is a colorable imitation of Living Essentials' trade dress in such a manner that is likely to cause confusion or to cause a mistake or to deceive the purchasing public;

(c) that Defendants be directed to file with this Court and serve on Living Essentials within 30 days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which defendants have complied with the injunction;

(d) that Defendants be ordered to account for and pay Living Essentials all profits,

gains, and advantages wrongfully realized by Defendants through their acts of trade dress infringement;

(e) that Defendants be ordered to pay Living Essentials such damages as Living Essentials has sustained as a consequence of Defendants' acts of trade dress infringement, including multiple damages in the amount of three times the damages sustained by Living Essentials pursuant to 15 U.S.C. §1117;

(f) that pursuant to 15 U.S.C. §1118, this Court order Defendants to deliver and destroy any and all labels, signs, prints, packages, wrappers, receptacles, advertisements, and web site materials incorporating the infringing trade dress;

(g) that pursuant to 15 U.S.C. §1117, Defendants pay Living Essentials' costs and attorneys' fees; and,

(h) that this Court award any and additional relief which it deems appropriate.

## COUNT II

### Common-law Trade Dress Infringement

40. Living Essentials restates and incorporates by reference the allegations of paragraphs 1 through 39.

41. Defendants' acts set forth above constitute violation of Living Essentials' common-law rights in its distinctive trade dress.

WHEREFORE, Living Essentials requests that this Court grant the following relief:

(a) that this Court find that Living Essentials is the owner of distinctive trade dress as outlined above and that Defendants have infringed this trade dress;

(b) that Defendants' employees, servants, agents, and all others acting in concert with them be enjoined, both preliminarily during the pendency of the litigation as well

as permanently thereafter, from infringing Living Essentials' trade dress and/or using any other trade dress which is a colorable imitation of Living Essentials' trade dress in such a manner that is likely to cause confusion or to cause a mistake or to deceive the purchasing public;

(c) that Defendants be directed to file with this Court and serve on Living Essentials within 30 days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

(d) that Defendants be ordered to account for and pay Living Essentials all profits, gains, and advantages wrongfully realized by Defendants through their acts of trade dress infringement;

(e) that Defendants be ordered to pay Living Essentials such damages as Living Essentials has sustained as a consequence of Defendants' acts of trade dress infringement;

(f) that Defendants be ordered to pay Living Essentials such damages as Living Essentials has sustained as a consequence of Defendants' acts of trade dress infringement.

(g) that this Court award any and additional relief which it deems appropriate.

## COUNT III

### Violation of Michigan's Consumer Protection Act

42. Living Essentials restates and incorporates by reference the allegations of paragraphs 1 through 41.

43. As set forth above, Defendants have intentionally caused a probability of

confusion and misunderstanding as to the source, sponsorship and approval of Living Essentials' CHASER product.

44. Defendants' promotion, sale and distribution of the CHEERS product, under the deceptively similar trade dress, constitutes deceptive representations of the goods.

45. In addition, by promoting, distributing and selling the hang-over prevention product in deceptively similar trade dress to Living Essentials' CHASER product, Defendants have misrepresented the sponsorship, approval, characteristic, benefits, status and affiliation of its CHEERS product.

46. Defendants' acts constitute violations of MCL 445.903.

WHEREFORE, Living Essentials requests that this Court grant the following relief:

(a) that this Court find that Living Essentials is the owner of distinctive trade dress as outlined above and that Defendants have violated MCLA 445.903 by using Living Essentials trade dress;

(b) that that pursuant to MCL 445.911 Defendants' employees, servants, agents, and all others acting in concert with them be enjoined, both preliminarily during the pendency of the litigation as well as permanently thereafter, from infringing Living Essentials' trade dress and/or using any other trade dress which is a colorable imitation of Living Essentials' trade dress in such a manner that is likely to cause confusion or to cause a mistake or to deceive the purchasing public;

(c) that Defendants be directed to file with this Court and serve on Living Essentials within 30 days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

(d) that Defendants be ordered to account for and pay Living Essentials all profits, gains, and advantages wrongfully realized by Defendants through their acts of trade dress infringement;

(e) that Defendants be ordered to pay Living Essentials such damages as Living Essentials has sustained as a consequence of Defendants' acts of trade dress infringement;

(f) that Defendants be ordered to pay Living Essentials such damages as Living Essentials has sustained as a consequence of Defendants' acts of trade dress infringement;

(g) that pursuant to MCL 445.911, Defendants pay Living Essentials costs and attorneys' fees; and,

(h) that this Court award any and additional relief which it deems appropriate.

Respectfully submitted,

BUTZEL LONG

By: _____
J. Michael Huget (P39150)
Laurie J. Michelson (P47214)
Michael Turco (P48705)
150 W. Jefferson, Suite 900
Detroit, MI 48226
(313) 225-7000
Attorneys for Plaintiff

Dated: April 29, 2003

### VERIFICATION

I, Tom Morse, President of Innovation Ventures, LLC d/b/a Living Essentials declare and verify that the allegations above are true to the best of my information, knowledge and belief.

_____
Thomas Morse

- 15 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED